IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LUTHER HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-02579 |
| | ) | |
| THE CITY OF ST. LOUIS, MISSOURI | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| and | ) | |
| | ) | |
| DUSTIN BOONE, in his official and individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RANDY HAYS, in his official and individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRISTOPHER MYERS, in his official and individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BAILEY COLLETTA, in her official and individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOSEPH MARCANTANO, in his official and individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEVEN KORTE, in his official and individual capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAIMIE PITTERLE, in her official and individual capacities, | ) | |

and                                          )
                                             )
LAWRENCE O'TOOLE, in his official and )
individual capacities,                       )
                                             )
and                                          )
                                             )
MAYOR LYDA KREWSON, in her                   )
official and individual capacities,          )
                                             )
and                                          )
                                             )
JOHN DOE and JANE DOE OFFICERS,              )
in their official and individual capacities, )
                                             )
     Defendants.    )

## COMPLAINT

## PARTIES & JURISDICTION

1.      At all times relevant, Plaintiff, Luther Hall (hereinafter "Hall") was a resident of the City of St. Louis, State of Missouri and a citizen of the United States of America. He is a police officer employed by the St. Louis Metropolitan Police Department (hereinafter "Department").

2.      Defendant the City of St. Louis, Missouri (hereinafter "City"), is a municipal corporation organized and existing under the laws of the State of Missouri as a charter city. The City of St. Louis operates the Department.

3.      Defendant Dustin Boone (hereinafter "Boone") was at all times relevant a City police officer. Upon information and belief, he is a resident of the State of Missouri. He is sued in both his individual and official capacities. He is Caucasian.

4.      Defendant Randy Hays (hereinafter "Hays") was at all times relevant a City police officer. Upon information and belief, he is a resident of the State of Missouri. He is sued in both his individual and official capacities. At the time of the acts alleged herein or thereafter, Hays

lived with Defendant Bailey Colletta.  He is Caucasian.

5.      Defendant Christopher Myers (hereinafter "Myers") was at all times relevant a City police officer.  Upon information and belief, he is a resident of the State of Missouri.  He is sued in both his individual and official capacities.  He is Caucasian.

6.      Defendant Bailey Colletta (hereinafter "Colletta") was at all times relevant a City police officer.  Upon information and belief, she is a resident of the State of Missouri.  She is sued in both her individual and official capacities.  At the time of the acts alleged herein or thereafter Colletta lived with Hays.  She is Caucasian.

7.      Defendant Joseph Marcantano (hereinafter "Marcantano") was at all times relevant a City police officer.  Upon information and belief, he is a resident of the State of Missouri.  He is sued in both his individual and official capacities.  He is Caucasian.

8.      Defendant Steven Korte (hereinafter "Korte") was at all times relevant a City police officer.  Upon information and belief, he is a resident of the State of Missouri.  He is sued in both his individual and official capacities.  He is Caucasian.

9.      Defendant Jaimie Pitterle (hereinafter "Pitterle") was at all times relevant a City police officer.  Upon information and belief, she is a resident of the State of Missouri.  She is sued in both her individual and official capacities.  She is Caucasian.

10.     Defendant Lawrence O'Toole (hereinafter "O'Toole") was at all times relevant the acting Chief of Police/Police Commissioner of the Department.  Upon information and belief, he is a resident of the State of Missouri.  He is sued in both his individual and official capacities. He is Caucasian.

11.     Defendant Lyda Krewson (hereinafter "Krewson") was at all times relevant herein and is the Mayor of the City of St. Louis.  She is a resident of the City of St. Louis.  She is sued in

both her individual and official capacities.  She is Caucasian.

12.     Defendants John Doe and Jane Doe officers were other officers at the scene who participated in the beating of Hall, failed to prevent it, participated in the unconstitutional search and seizure of Hall, or participated in the conspiracy to cover-up the misconduct of the named Defendants.

13.     This action is brought pursuant to 42 U.S.C. Sections 1981, 1983 and 1988 and the Fourth, Fifth, and/or Fourteenth Amendments to the United States Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.   Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the judicial district where the acts or omissions giving rise to the claim occurred.

15.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO ALL COUNTS

16.     On or about September 1, 2013, the City of St. Louis took local control of the Department after over 150 years of state control.

17.     On or about April 18, 2017, Defendant Krewson became mayor of the City of St. Louis.

18.     On or about April 19, 2017, Defendant Krewson terminated Chief D. Samuel Dotson (hereinafter "Dotson") by forcing him to "retire" as the Chief of Police/Police Commissioner.

19.     Defendant Krewson then appointed Defendant O'Toole as acting Police Chief/Police Commissioner in April 2017.

20.     On or about September 15, 2017, Jason Stockley, a Caucasian police officer, was acquitted in the shooting death of Anthony Lamar Smith, an African American citizen.  Ultimately, the City of St. Louis and/or State of Missouri paid $900,000.00 to settle a lawsuit for the wrongful death of Mr. Smith and an additional $500,000.00 after it was discovered that lab reports showing that only Officer Stockley's DNA was on the gun purportedly recovered from Mr. Smith's car were not provided in discovery.  Defendant Krewson's City Counselor, Julian Bush, stated when the additional $500,000.00 was agreed to be paid that it was essentially the sanction for withholding evidence.

21.     The weekend of September 15-17, 2017 Hall and his partner were working in an undercover capacity to monitor demonstrations related to the acquittal of Officer Stockley.  A detective in the Intelligence Unit was supposed to be assigned to monitor their activity and relay information to commanders and units.

22.     Hall is African American.  His partner is Caucasian.

23.     While working in an undercover capacity, Hall wore shirts that were short enough and tight enough that it would be obvious to police officers and demonstrators that he was not and could not be concealing a weapon.

24.     On or about September 17, 2017, Hall and his partner were supposed to relay illegal activity and identify those involved in it to the Real Time Crime Center.  As a result, they were in downtown St. Louis at approximately 7:30/8:00 p.m., when some demonstrators started breaking windows and flowerpots, which activity Hall relayed to the Real Time Crime Center.

25.     Hall and his partner followed the group responsible for this damage until the group split because numerous police officers started running towards the group firing bean bag rounds and wielding batons.  Officers in police vehicles were using mace canisters on the crowd and

shooting pepper balls at it.  Hall never heard an order to disperse before police officers began firing upon and macing the crowd and saw no justification for this use of force by the officers at the scene.

26.     Hall continued to follow a part of the group that was responsible for breaking windows and smashing flowerpots to provide intelligence.

27.     As Hall followed the group, the police again used mace, pepper balls, and bean bag bullets on the crowd that was trying to flee.   This caused the group to move west towards 14th Street.

28.     When Hall was on Olive near 14th Street, he saw a number of SUVs turn onto Olive and police in the street.

29.     As Hall approached the corner of Olive and 14th Street, a vehicle stopped and officers jumped out of it.

30.     Hall stopped and put his hands up, holding his cell phone in one hand and his camera in the other.

31.     Defendant Colletta ordered Hall to the ground.

32.     As Hall was complying with the order, with his hands out in front of him still holding his cell phone in one hand and his camera in the other hand, showing the officers that he was no threat to them, he was picked up and slammed face first into the ground.  He was picked up a second time and thrown face first into the ground.  Hall felt blood gushing out of his nose and lip.

33.     To cover-up their own misconduct and as part of the conspiracy, unknown officers told the St. Louis Post Dispatch that two uniformed officers ordered Hall to show his hands, and when he refused to do so, they knocked him down, hit him at least three times, and zip tied his

hands behind his back.

34.     Hall was surrounded by police officers who beat him with their batons and fists and kicked him with their boots.  He could feel blows landing all over his body to include his neck and the side of his head.

35.     When officers told Hall to put him hands behind his back, they were standing on his arms.

36.     Officers then grabbed Hall's arms and put him in flex cuffs, even though he had done nothing to justify his arrest.

37.     Officers then illegally searched Hall's backpack, finding nothing more sinister and threatening than two small bags of chocolate Teddy Grahams and phone and photo equipment.

38.     After the search of Hall's backpack was completed, an officer sat Hall up.  He could feel blood pouring from his face.

39.      Defendant Myers pulled Hall's DSLR camera off his neck, removed the battery (apparently believing the battery was the memory card) and tossed the camera on the ground, breaking the camera.  Hall's battery was never recovered.

40.     While sitting in flex cuffs, Hall was in pain and tried to straighten his back to relieve it.  The officer standing behind him, Defendant Myers, would chuck Hall on his head and face with his kneepad or shin guard whenever Hall tried to move.  Defendant Myers also leaned over Hall and told him to "stop f---ing moving."

41.     During the arrest, Defendant Myers smashed Halls cell phone with his baton.  He later admitted this to several individuals.

42.     Hall was never told by the officers at the scene why he was arrested or why his backpack was illegally searched, his camera was seized, and his phone smashed.

43.     To avoid blowing his cover to other demonstrators, Hall sat in flex cuffs for approximately 10 minutes before he was recognized as a police officer and removed from the scene.

44.     As a SWAT officer removed Hall from the scene, Defendant Myers said, "hey where are you going with him, that's my arrest."

45.     Hall was treated by medics at the scene and told he needed further medical attention because he had a concussion.

46.     Hall was then taken to police headquarters, where he provided information about the scene, to include but not be limited to telling Defendant O'Toole and others that he had been beaten by police officers.

47.     Hall was then treated for his serious injuries at a triage center. He was taken to this triage center by Defendant Krewson's driver.

48.     After Hall was treated for his injuries, Defendant Krewson's driver transported him back to headquarters.  Hall rode up the elevator with Defendant Krewson, who knew Hall was working in an undercover capacity because of surveillance footage he had provided on Saturday and a briefing he had given on Sunday morning.  While Hall was riding up the elevator with Defendant Krewson, she said to him, "Oh they messed up your cute face."

49.     Texts messages obtained by the FBI from Boone and Myers' cell phones show that they intended to beat citizens involved in the Stockley demonstrations.  By way of example, but not exhaustive of these texts, Defendant Myers texted, "I know right, Yes I guess so, let's whoop some ass."

50.     Defendant Boone texted messages that include but are not necessarily limited to the following:

a.     "The more the merrier!!! It's gonna get IGNORANT tonight!! But it's gonna be a lot of fun beating the hell out of these (expletive) once the sun goes down and nobody can tell us apart!!!!"

b.     "I'm on (Sgt **'s) arrest team! Me and a BIG OL black dude r the guys that are hands on! No stick or shield….. just (expletive) people up when they don't act right! …"

c.     "That's my dude today! Haha he's basically a thug that's on our side!!! It's he and I that just grab (expletive) and toss em around."

d.     "We really need these (expletive) to start acting up so we can have some fun."

e.     "Yeah. A lot of cops gettin hurt, but it's still a blast beating people that deserve it. And I'm not one of the people hurt, so I'm still enjoying each night….'

f.     "… The problem is when they start acting like fools, we start beating the (expletive) out of everyone on the street after we give two warnings …"

51.     A text message sent from Hays to Boone supports that the Defendants treated Caucasian protesters differently than African American protesters.  It stated: "Remember we are in south city. They support us but also cameras. So make sure you have an old white dude as a witness."

52.     While Hall's partner was unlawfully arrested by St. Louis police officers on September 17, 2017, he was not beaten.

53.     On the night of September 17, 2017, police officers were chanting, "Whose streets? Our streets."

54.     In a press conference held on September 18, 2017, even though Defendant O'Toole

knew Hall was seriously injured by fellow officers, he told the media, "I'm proud to say the City of St. Louis and the police owned the night.  Our officers are doing outstanding work." Such statements show he ratified the unlawful conduct of the officers at the scene set forth above.

55.     During the same September 18, 2017 press conference, Defendant Krewson made a statement to the media, thanking first responders for the outstanding job they had been doing, adding, "Law enforcement has my full support."  At the time Krewson made this statement, she knew or should have known that Hall had been severely beaten by St. Louis police officers, showing that she also ratified this unlawful conduct.

56.     On or about September 21, 2017 as another press conference, Defendant Krewson denied knowing anything about an undercover police officer being injured on September 17, 2017, even though she had seen that Hall was injured on September 17, 2017.

57.     The officers who beat Hall, causing serious injury, identified themselves at a roll call the next day when ordered to do so by a commander.  Because of the Department's long history of not only protecting but condoning the use of excessive force and other constitutional violations, these officers were permitted to remain on the streets until their text messages were obtained by the FBI.

58.     At the time these officers were permitted to remain on the streets, the City's Civil Service Rules provided for putting officers on forced leave when they posed a risk to themselves or others.  Officers who arrest and beat citizens for no reason are a risk to others.

59.     Even though the Defendants knew that Hall was seriously injured by fellow officers, no police report or other documents were prepared to explain Hall's arrest or the use of force against him.  Upon information and belief, the officers involved in this serious misconduct were not required to write a report or memo about Hall's arrest or injuries in an effort to cover-up

this serious misconduct.

60.     On or about October 19, 2017, in testimony before the Honorable Catherine Perry in a lawsuit filed by the ACLU related to the events of September 17, 2017, Sgt. Brian "Riot King" Rossomanno testified that he heard, "there was some sort of resisting" on the part of Hall as part of the conspiracy to cover-up and minimize this police misconduct.

61.     Even though Defendant Marcantano had been identified as present and participating in the beating of Hall on September 17, 2017, he was promoted to sergeant by Defendant O'Toole on or about December 21, 2017, showing that this misconduct is not only protected but rewarded by the City and Department.

62.     In contrast to the efforts to protect the Caucasian police officers who falsely arrested and severely beat Hall by allowing them to remain on the streets was the Department and City's treatment of African American Captain Ryan Cousins, who was put on forced leave and fired after other police officers accused him of misconduct at a crime scene, when it was the officers at the scene who had violated the victim's 4th and 5th Amendment rights and made false statements in arrest and search warrant applications.

63.     Ultimately, the City's own Civil Service Commission found that Cousins had been discriminated against because of his race and ordered him reinstated with backpay.  While Cousins was fired by Dotson (Caucasian), Krewson was mayor and O'Toole the acting Police Chief when the Civil Service Commission ordered Cousins reinstated. Instead of correcting this wrong, they fought the decision of their own Civil Service Commission until they ultimately settled with Cousins for a substantial sum of money.

64.     Prior to Hall being injured by fellow officers, an off duty African American police officer was shot by a Caucasian police officer when he was trying to assist in a police chase.  Upon

11

information and belief, no Internal Affairs investigation was conducted into this use of excessive force against an African American police officer, as part of a custom and practice of protecting Caucasian police officers who use excessive force, particularly against African American citizens.

65.     As a direct and proximate result of the acts and/or omissions of the Defendants alleged herein, Hall suffered injuries that included but were not necessarily limited to herniated discs; a rotator cuff tear; a concussion; a bruised tailbone; a hole in his face above his lip, requiring sutures; inflamed jaw muscles that prevented him from eating, resulting in weight loss;  as well as contusions, abrasions and other injuries.

66.     Hall has and will continue to require medical care and treatment as a result of his injuries, to include surgeries.

67.     Hall suffered and continues to suffer pain of the mind and body as a result of the acts of the Defendants.

68.     Hall was so seriously injured by the officers who beat him that he is still unable to return to work.

69.     Upon information and belief, the City of St. Louis, through its elected and appointed officers, agents, and employees has in the past and continues to condone and protect officers of the Department who use excessive force and otherwise deprive citizens of their constitutional rights to protect the City and Department from embarrassment and liability.

**COUNT I**
**<u>EXCESSIVE FORCE CLAIM (AGAINST DEFENDANTS BOONE,</u>**
**<u>HAYS, MYERS AND OTHER UNKOWN OFFICERS)</u>**

For Count I of Plaintiff's cause of action against Defendants Boone, Hays, Myers and other unknown officers, Plaintiff states as follows:

70.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully

herein.

71.     Defendants Boone, Hays, Myers and other unknown officers hit, struck and beat with fists and/or batons, kicked, stomped upon, and/or slammed Plaintiff to the ground while he was complying with a directive to get on the ground and both of his hands were in front of him holding a camera and cell phone, showing that he was no threat.

72.     The use of force by Defendants Boone, Hays, Myers and other unknown officers was excessive because it was unreasonable in light of the circumstances and clearly in excess of any force required to be used against Hall.

73.     The force used by Defendants Boone, Hays, Myers and other unknown officers was not reasonable in light of the facts and/or circumstances confronting them at the time they used such force against Hall in that the application of such force was not needed under the circumstances then confronting the officers, the amount of force was excessive in light of the need for the use of force, and/or the injury inflicted was extensive.

74.     A reasonable officer on the scene would not have used such force against Hall under the same or similar circumstances.

75.     Defendants were acting under color of state law at all times relevant.

76.     As a direct and proximate result of the excessive use of force by Defendants Boone, Hays, Myers and other unknown officers against Hall, he suffered and will continue to suffer physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

77.     As a direct and proximate result of Defendants Boone, Hays, Myers and other unknown officers use of excessive force as set forth herein, Hall has incurred and will continue to

incur expenses related to reasonable and necessary medical care and treatment.

78.     The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers and other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future physical and emotional injuries, medical expenses, and emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT II
## FAILURE TO INTERVENE (AGAINST DEFENDANTS COLLETTA, MARCANTANO, KORTE, PITTERLE, AND OTHER UNKNOWN OFFICERS)

For Count II of Plaintiff's cause of action against Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers, Plaintiff states as follows:

79.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

80.     Upon information and belief, Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers did not participate in the use of excessive force against Hall, but witnessed the actions of other officers at the scene and failed to intervene to prevent it from occurring and/or to lessen its severity.

81.   Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers knew that the force used against Hall was unreasonable under the circumstances and was clearly excessive.

82.   Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers had the opportunity and means to prevent the harm to Hall from occurring but failed to intercede by stopping the use of excessive force against Hall.

83.   Defendants acted under color of state law.

84.   As a direct and proximate result of Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers' failure to intervene in the use of excessive force against Hall, he has suffered and will continue to suffer physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

85.   As a direct and proximate result of the failure to intervene by Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers as set forth herein, Hall has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

86.   The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future

physical and emotional injuries, medical expenses, emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

**COUNT III**
**FAILURE TO INTERVENE (AGAINST DEFENDANTS**
**BOONE, HAYS, AND MYERS)**

For Count III of Plaintiff's cause of action against Defendants Boone, Hays, and Myers, Plaintiff states as follows:

87.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

88.     To the extent that Defendants Boone, Hays, and/or Myers did not participate in the excessive use of force against Hall at any time, he/they witnessed such conduct and failed to intervene to prevent it from occurring and/or to lessen its severity.

89.      Defendants Boone, Hays, and/or Myers knew that the force used against Hall was unreasonable under the circumstances and was clearly excessive.

90.     Defendants Boone, Hays, and/or Myers had the opportunity and means to prevent the harm to Hall from occurring but failed to intercede by stopping the use of excessive force against Hall.

91.     Defendants acted under color of state law.

92.     As a direct and proximate result of Defendants Boone, Hays, and/or Myers failure to intervene in the use of excessive force against Hall, he has suffered and will continue to suffer physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and

16

stress.

93.     As a direct and proximate result of the failure to intervene by Defendants Boone, Hays, and/or Myers as set forth herein, Hall has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

94.     The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, and/or Myers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future physical and emotional injuries, medical expenses, emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT IV
## UNCONSTITUTIONAL ARREST (AGAINST DEFENDANTS BOONE, HAYS, MYERS, COLLETTA, MARCANTANO, KORTE, PITTERLE, AND/OR OTHER UNKNOWN OFFICERS)

For Count IV of Plaintiff's cause of action against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers, Plaintiff states as follows:

95.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

96.     When Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle,

17

and/or other unknown officers arrested Hall, placing him in handcuffs, they did not have probable cause to believe that Hall had engaged in any unlawful activity.

97.     Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers arrested Hall without probable cause, justification, or lawful authority to do so and thereby violated Hall's rights secured by the Fourth and/or Fourteenth Amendments to the United States Constitution.

98.     At all times relevant herein, these Defendants were acting under color of state law.

99.     As a direct and proximate result of Hall's unconstitutional arrest, he suffered physical and emotional injuries, including but not limited to past, present, and future pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.  As a result of these injuries, Hall has incurred reasonable and necessary medical treatment and will continue to require medical treatment in the future.

100.    The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future physical and emotional injuries, medical expenses, emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such

other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT V
## EQUAL PROTECTION CLAIM (AGAINST DEFENDANTS BOONE, HAYS, MYERS, COLLETTA, MARCANTANO, KORTE, PITTERLE, AND OTHER UNKNOWN OFFICERS)

For Count V of Plaintiff's cause of action against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers, Plaintiff states as follows:

101.    Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

102.    Defendants Boone, Hays, Myers and other unknown officers use of excessive force against Hall was motivated by their bias against him as African American citizen.

103.    Defendants Boone, Hays, Myers and other unknown officers acting under color of state law purposefully discriminated against Hall because of his race when they "beat him like Rodney King," as Hall described to a commander of the Department shortly after he was beaten.

104.    Defendants Colletta, Marcantano, Korte, Pitterle and other unknown officers failed to intervene in the use of excessive force against Hall.

105.    Defendants Colletta, Marcantano, Korte, Pitterle and other unknown officers were acting under color of state law when upon information and belief that purposefully discriminated against Hall because of his race by failing to stop other officers from beating him.

106.    Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers searched and seized Hall in violation of his 4th Amendment rights.

107.    At the time of Halls arrest, Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers were acting under color of state law, and upon information and belief, purposefully discriminated against Hall because of his race when they searched and seized him.

108.    As a direct and proximate result of the intentional discriminatory conduct of the Defendants named herein, Hall suffered and will continue to suffer physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

109.    As a direct and proximate result of the Defendants intentional discriminatory conduct, Hall has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

110.    The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future physical and emotional injuries, medical expenses, and emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

**COUNT VI**
**SECTION 1981 CLAIM (AGAINST DEFENDANTS BOONE,**
**HAYS, MYERS, COLLETTA, MARCANTANO, KORTE, PITTERLE,**
**AND OTHER UNKNOWN OFFICERS)**

For Count VI of Plaintiff's cause of action against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers, Plaintiff states as follows:

111.    Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully

herein.

112.    Hall is a member of a racial minority as an African American citizen.

113.    The Defendants named herein were acting under color of state law.

114.    Defendants Boone, Hays, Myers and other unknown officers used excessive force

against Hall as set forth above.

115.    Defendants Colletta, Marcantano, Korte, Pitterle and other unknown officers acted

unconstitutionally when they failed to stop other officers from beating Hall.

116.    Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle,

and/or other unknown officers arrested and searched Hall in violation of his 4th Amendment rights.

117.    Upon information and belief, the Defendants named herein intended to discriminate

against Hall because of his race.

118.    This discrimination involved activity enumerated in 42 U.S.C. § 1981 in that such

conduct deprived Hall of the right to full and equal benefit of the laws for the security of persons

as is enjoyed by Caucasian citizens.

119.    As a direct and proximate result of the intentional discriminatory conduct of

the Defendants named herein, Hall suffered and will continue to suffer physical and emotional

injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish,

inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

120.    As a direct and proximate result of the Defendants intentional discriminatory

conduct, Hall has incurred and will continue to incur expenses related to reasonable and necessary

medical care and treatment.

121.    The conduct of these Defendants and each of them jointly and separately was

reckless and callously indifferent to the constitutional and/or statutory rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future physical and emotional injuries, medical expenses, and emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## VII
## UNCONSTITUTIONAL SEARCH AND SEIZURE (AGAINST DEFENDANTS BOONE, HAYS, MYERS, COLLETTA, MARCANTANO, KORTE, PITTERLE, AND OTHER UNKNOWN OFFICERS)

For Count VII of Plaintiff's cause of action against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers, Plaintiff states as follows:

122.   Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

123.   Hall's backpack was searched when he was arrested by the officers named herein. Because Hall was arrested without probable cause, the search of his person (backpack) violated the 4th Amendment to the United States Constitution.

124.   Hall's camera was seized and then damaged and his cell phone was broken by Defendant Myer without a search warrant or exigent circumstances in violation of Hall's 4th Amendment rights.

125.     As a direct and proximate result of the intentional conduct of the Defendants named herein, Hall suffered and will continue to suffer emotional injuries to include but not be limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

126.     The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Hall, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future emotional injuries; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## VIII
## CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS EXCEPT CITY OF ST. LOUIS)

For Count VIII of Plaintiff's cause of action against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, O'Toole, Krewson, and/or other unknown officers in their individual capacities, Plaintiff states as follows:

127.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

128.     Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, O'Toole,

23

Krewson, and/or other unknown officers, acting under color of state law, conspired together and amongst themselves and reached a mutual understanding to undertake a course of conduct to deprive Hall of his constitutional rights as set forth above and/or to conceal the unconstitutional conduct of officers of the Department directed towards Hall to protect the City and Department.

129.    In furtherance of this conspiracy, one or more of the Defendants engaged in one or more overt act, including but not limited to the following:

      a.    Falsely arrested Hall knowing there was no probable cause to do so;

      b.    Used excessive force against Hall;

      c.    Failed to intervene in other officers' use of excessive force against Hall;

      d.    Created and publicized a false narrative that Hall failed to comply with the directive given to him at the scene and/or resisted to justify the excessive use of force;

      e.    Allowed or directed the officers at the scene to prepare no police report or other reports or memoranda to conceal this misconduct;

      f.    Met to coordinate their stories to cover-up the events surrounding their misconduct against Hall;

      g.    Acted like they did not know Hall was injured; and

      h.    Engaged in a course of conduct that was designed to cover-up the misconduct of the officers at the scene to protect the City and its officers from liability and embarrassment.

130.    The individual Defendants shared the general conspiratorial objective which was to abuse Plaintiff by falsely arresting him and using excessive and unlawful force against him and to thereafter conspire in an attempt to insulate themselves from sanction, civil, criminal or departmental by failing and refusing to give factually accurate accountings of the events that led

to the arrest and injury of Hall and/or commending officers for their work on the night Hall was unconstitutionally arrested and beaten.  Such conduct is so pervasive in the Department and/or City and is so effective to insulate law enforcement personnel from sanction, civil, criminal, or departmental, Defendants felt free to engage in the misconduct described above, without any fear of sanction or retribution.

131.    These Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up and/or ignoring this course of conduct so as to insulate themselves and others from liability for the outrageous and unlawful acts of these Defendants as described herein.

132.    As a direct and proximate result of the conspiracy amongst Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, O'Toole, Krewson, and/or other unknown officers, Hall suffered physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

133.    As a direct and proximate result of the conspiracy amongst Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, O'Toole, Krewson, and/or other unknown officers as set forth herein, Hall has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

134.    The conduct of these Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against the Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, O'Toole, Krewson, and/or other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, current, and future physical and emotional injuries, medical expenses, emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT IX
## MUNICIPAL CUSTOM AND/OR FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL AND/OR DISCIPLINE UNDER 42 U.S.C. § 1983 (AGAINST O'TOOLE, KREWSON, AND CITY)

For Count IX of Plaintiff's cause of action against Defendants O'Toole, Krewson, and City of St. Louis, Plaintiff states as follows:

135.    Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

136.    Hall's constitutional and/or statutory rights were violated as described in detail above.

137.    There exists within the Department and/or the City widespread customs, practices and usages that are so pervasive that they constitute the policies of Defendants City, Krewson, and O'Toole, which caused the constitutional and/or statutory deprivations set forth above, including, but not limited to:

   a.    Arresting subjects without probable cause and in violation of their constitutional rights;

b.      Ignoring the policies and procedures of the City and/or Department, by encouraging and/or permitting the unconstitutional searches and/or seizures of citizens, the use of excessive force, and/or failing to intervene when such constitutional deprivations occur;

c.      Treating African American citizens differently and less favorably than Caucasian citizens;

d.      Engaging in a course of conduct designed to cover-up and insulate City officials from civil liability and/or embarrassment; and

e.      Failing to adequately train, supervise, control, and/or discipline police officers and/or City officials concerning the practices described above to assure compliance with City and/or Department policy, state and federal laws and the Constitution of the United States.

138.    Defendant City's policymaking officials, to include but not be limited to Defendants O'Toole and Krewson demonstrated deliberate indifference to or tacit authorization of the Defendants' misconduct after notice of such misconduct.  By way of example, but not exhaustive, both praised and/or supported police conduct the morning after Hall was unconstitutionally arrested and beaten by fellow officers, after Krewson told Hall, "Oh they messed up your cute face."

139.    Alternatively, but without waiver of the foregoing, the City's training program was inadequate to train its officers to properly handle reoccurring situations like the one involving Hall in the proper and lawful arrest of citizens; the proper use of force, the proper search of citizens, the duty to intervene to prevent the excessive use of force and other constitutional deprivations, and/or the duty to treat all citizens equally and not intentionally discriminate against African

American citizens.

140.    Defendant City's failure to train in these respects evidenced a deliberate indifference to the rights of others, to include Hall.

141.    The deficiencies in Defendants training procedures actually caused Hall's constitutional injuries as set forth herein.

142.    Additionally, but without waiver of the foregoing, City officials failed to supervise, control, and/or discipline officers of the Department when they engaged in constitutional violations like those set forth above, such that they demonstrated a deliberate indifference to or tacit authorization of such acts on the part of the officers at the scene.

143.    The acts of these Defendant were taken under color of state law.

144.    As a direct and proximate result of the acts and/or omissions of Defendants City, Krewson, and O'Toole as set forth herein, Hall suffered physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

145.    As a direct and proximate result of the acts and/or omission of Defendants City, Krewson, and O'Toole as set forth herein, Hall has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

146.    The conduct of Defendants O'Toole and Krewson, and each of them jointly and separately, was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, making an award of punitive damages warranted and necessary to punish them in their individual capacities and to deter each of them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants City of St. Louis,

Krewson, and O'Toole seeking money damages for compensatory damages in an amount that is fair and reasonable for his past, current, and future physical and emotional injuries; emotional pain and suffering; for punitive damages against Defendants O'Toole and Krewson in their individual capacities; the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT X
## <u>ASSAULT AND BATTERY (AGAINST DEFENDANTS BOONE, HAYS, MYERS, AND OTHER UNKNOWN OFFICERS)</u>

For Count X of Plaintiff's cause of action against Defendants Boone, Hays, Myers, and other unknown officers, Plaintiff states as follows:

147.    Plaintiff incorporates the preceding paragraphs of his Complaint as if set forth fully herein.

148.    Defendants Boone, Hays, Myers and other unknown officers hit, struck and beat with fists and/or batons, kicked, stomped upon, and/or slammed Plaintiff to the ground while he was complying with a directive to get on the ground and both of his hands were in the air holding a camera and cell phone, showing that he was not a threat.

149.    The acts of Defendants Boone, Hays, Myers and other unknown officers were affirmative negligent or intentional acts that purposefully and dangerously caused or increased the risk of injury to Hall.

150.    Defendants Boone, Hays, Myers and other unknown officers' acts as set forth herein were taken with bad faith and/or malice.

151.    As a direct and proximate result of Defendants Boone, Hays, Myers and other unknown officers assault and battery of Hall, he suffered physical and emotional injuries and has

suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

152.     As a direct and proximate result of Defendants Boone, Hays, Myers and other unknown officers' assault and battery of Hall, he has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

153.     The conduct of Defendants Boone, Hays, Myers and other unknown officers and each of them jointly and separately was outrageous because of their evil motive and reckless indifference to Hall's rights, making an award of punitive damages warranted and necessary to punish these Defendants and to deter them and others from the same or similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers, and/or other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, current, and future physical and emotional injuries, medical expenses, emotional pain and suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT XI
## FALSE ARREST (AGAINST DEFENDANTS BOONE, HAYS, MYERS, COLLETTA, MARCANTANO, KORTE, PITTERLE, AND/OR OTHER UNKNOWN OFFICERS)

For Count XI of Plaintiff's cause of action against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers, Plaintiff states as follows:

154.     Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth fully herein.

155.    Defendants falsely arrested and/or imprisoned Hall as set forth above on September 17, 2017 without probable cause, justification, or lawful authority to do so.

156.    The acts of the Defendants constituted the false arrest and/or imprisonment of Hall, who was confined and held against his will without just cause or excuse, and without provocation.

157.    Defendants acts as set forth herein were taken with bad faith and/or malice.

158.    As a direct and proximate result of Hall's false arrest by Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers, Hall suffered physical and emotional injuries and has suffered and will continue to suffer pain of the body and mind, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

159.    As a direct and proximate result of Hall's false arrest by Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers as set forth herein, Hall has incurred and will continue to incur expenses related to reasonable and necessary medical care and treatment.

160.    The conduct of Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers, and each of them jointly and separately was outrageous because of their evil motive and reckless indifference to Hall's rights, making an award of punitive damages warranted and necessary to punish these Defendants and to deter them and others from similar misconduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and/or other unknown officers seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his past, present, and future physical and emotional injuries, medical expenses, emotional pain and

31

suffering; for punitive damages against each Defendant in his/her individual capacity; for the costs of this action, to include but not necessarily limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**


By:        /s/ Lynette M. Petruska
         Lynette M. Petruska, Mo. Bar No. 41212
         lpetruska@plebanlaw.com
         J.C. Pleban, MO Bar No. 63166
         jc@plebanlaw.com
         C. John Pleban, Mo. Bar No. 24190
         cpleban@plebanlaw.com
         2010 South Big Bend Blvd.
         St. Louis, MO  63117
         (314) 645-6666 - Telephone
         (314) 645-7376 – Facsimile

         *Attorneys for Plaintiff*