**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LUTHER HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:19-CV-02579 JCH |
| | ) |
| CITY OF ST. LOUIS, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motions of Defendants Krewson, O'Toole, City of St. Louis, Missouri, and Coletta to Dismiss, (ECF Nos. 12, 21, 23, 39), on the Motion of Defendants Krewson, O'Toole, and the City of St. Louis, Missouri to Strike, (ECF No. 10), and on Defendant Krewson's Motion for Sanctions pursuant to Rule 11 (ECF No. 26). The matters are fully briefed and ready for disposition.

**BACKGROUND[1]**

On September 16, 2019, Plaintiff Hall, a police officer, filed the instant Complaint. The Complaint alleges that on the weekend of September 15-17, 2017, Plaintiff Hall and his partner were working undercover to monitor demonstrations related to the acquittal of Officer Stockley. (ECF No. 1, ¶ 21). A detective in the Intelligence Unit was supposed to be assigned to monitor their activity and relay information to commanders and units. *Id.*   On or about September 17, 2017, Hall and his partner were supposed to relay illegal activity and identify those involved in it to the Real Time Crime Center. *Id.*, ¶ 24. At approximately 7:30 p.m. or 8:00 p.m. Plaintiff alleged

---

[1] The following facts are taken from the Plaintiff's Complaint, and for the purposes of this Motion are viewed in the light most favorable to the Plaintiff.

that he and his partner were downtown St. Louis when some demonstrators broke windows and flower pots. *Id.* Plaintiff Hall relayed the information to the Real Time Crime Center. *Id.*   Plaintiff Hall and his partner then followed the group responsible for this damage until numerous police officers started to run toward the group firing bean bag rounds and wielding batons, causing the group to split up. *Id.*, ¶ 25. Officers in police vehicles used mace on the crowd and shoot pepper balls at it. I*d.* Plaintiff Hall asserts that he never heard an order to disperse before police officers began firing upon the crowd. *Id.* Plaintiff Hall further asserts that he saw no justification for the use of force by the officers at the scene. *Id.*

Plaintiff Hall continued to follow part of the group to provide intelligence. *Id*., ¶ 26. Plaintiff asserts that the police again used mace, pepper balls, and bean bag bullets on the crowd trying to flee causing the crowd to move west on 14th Street. *Id.* ¶ 27. As Plaintiff approached the corner of Olive and 14th Street, a police vehicle stopped, and officers jumped out of it. *Id*. ¶ 29. Plaintiff stopped and put his hands up, holding his cell phone in one hand and his camera in the other. *Id.* ¶ 30. Defendant Colletta ordered Plaintiff Hall to get on the ground and he complied. *Id*. ¶¶ 31-32. Plaintiff was picked up and slammed face first into the ground twice. *Id.* ¶ 32. Plaintiff alleges that to cover up their own misconduct, unknown officers told the St. Louis Post Dispatch that two uniformed officers ordered Plaintiff Hall to show his hands, that he refused, and the officers then hit him, and zip tied his hands behind his back. *Id.* ¶ 33. Rather, Plaintiff asserts that he was surrounded by police officers who beat him with batons, hit him, and kicked him. *Id.* ¶ 34. Plaintiff asserts that when officers told him to put his hands behind his back, they were standing on his arms. *Id*. ¶ 35. Plaintiff asserts that the officers then grabbed his arms and put him in flex cuffs and illegally searched his backpack. *Id*. ¶ 37.

While sitting in in flex cuffs, Plaintiff Hall was in pain and attempted to straighten his back to relieve it. Defendant Myers hit Plaintiff on his head and face with his kneepad or shin guard whenever Plaintiff attempted to move. *Id*. ¶ 40. Defendant Myers also destroyed Plaintiff Hall's cellphone with his baton. *Id*. ¶ 41. Plaintiff Hall was never told why he was arrested. *Id*. ¶ 42. He sat in flex cuffs for approximately ten (10) minutes before he was recognized as a police officer and was removed from the scene. *Id*. ¶ 43.

Plaintiff Hall was treated at the scene by medics and told he needed further medical attention because he had a concussion. *Id*. ¶45. Plaintiff was then taken to police headquarters, where he provided information about the scene, and told Defendant O'Toole and others that he had been beaten by police officers. *Id*. ¶ 46. Plaintiff was taken to a triage center by Defendant Krewson's driver and treated for his injures.   *Id*. ¶ 47. After treatment, Defendant Krewson's driver transported the Plaintiff back to headquarters. *Id*. ¶ 48. Plaintiff Hall then rode up the elevator with Defendant Krewson, who Plaintiff Hall alleges was aware of his working in an undercover capacity. *Id*. Plaintiff alleges that while in the elevator, Defendant Krewson remarked on the injuries to his face. *Id*.

Plaintiff Hall alleges that although Defendant O'Toole knew Plaintiff Hall was seriously injured by fellow officers, he told the media during a press conference on September 18, 2017, "I'm proud to say the City of St. Louis and the police, owned the night. Our officers are doing outstanding work." Plaintiff asserts that his statements ratified the unlawful conduct by the officers at the scene. *Id*. ¶ 54. During the same press conference, Defendant Krewson made a statement to the media, thanking first responders for an outstanding job and stated that "law enforcement has my full support". Plaintiff asserts that at the time Defendant Krewson made this statement she knew or should have known, that Hall had been severely beaten by St. Louis police officers. *Id.*

On or about September 21, 2017, at another press conference, Defendant Krewson denied knowing

anything about an undercover police officer being injured on September 17, 2017.  Plaintiff further

alleges that the police department did not properly reprimand the officers responsible for the attack

on him and alleges that the officers were permitted to remain on the streets, despite the City's Civil

Service Rules. Plaintiff asserts that no police report or other documents were prepared to explain

Plaintiff's arrest or the use of force against him; that officers involved were not required to write

a report or memo about the arrest or injures; that  Sgt. Rossomanno testified in a lawsuit brought

by the ACLU that "there was some sort of resisting" by Plaintiff Hall; and that although Defendant

Marcantano had been identified as present and participating in the beating of Plaintiff Hall, he was

promoted to sergeant by Defendant O'Toole on or about December 21, 2017. *Id*. ¶¶ 58 – 61.

Plaintiff brings the following counts in this case:

> Count I: Excessive Force against Defendants Boone, Hays, Myers, and other unknown officers.
> Count II: Failure to Intervene against Defendants Colletta, Marcantano, Korte, Pitterle, and other unknown officers.
> Count III: Failure to Intervene against Defendants Boone, Hays, and Myers
> Count IV: Unconstitutional Arrest against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and other unknown officers.
> Count V: Equal Protection against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and unknown officers
> Count VI: §1981 against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and unknown officers
> Count VII: Unconstitutional Search and Seizure against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle and unknown officers.
> Count VIII: Civil Conspiracy against all Defendants except City of St. Louis
> Count IX: Municipal Custom and/or failure to instruct, train, supervise, control and/or discipline under 42 U.S.C. §1983 against Defendants O'Toole, Krewson, and City of St. Louis
> Count X: Assault & Battery against Defendants Boone, Hays, Myers and unknown officers
> Count XI: False Arrest against Defendants Boone, Hays, Myers, Colletta, Marcantano, Korte, Pitterle, and unknown officers

As to the Motions to Dismiss, Defendants Krewson, O'Toole and Colletta seek the dismissal of Count VIII: Civil Conspiracy against themselves. Defendants Krewson, O'Toole and the City of St. Louis seek the dismissal of Count IX: Municipal Liability against themselves. Additionally, Defendant Coletta, seeks Dismissal of Count II: Failure to intervene; Count IV: Unconstitutional Arrest; Count V: Equal Protection; Count VI: §1981; Count VII: Unconstitutional Search and Seizure; and Count XI: False Arrest against himself individually. Defendants St. Louis City, Krewson, and O'Toole further seek that the Court strike references to individual defendants being sued in their official capacities pursuant to Federal Rule of Civil Procedure 12(f). Defendant Krewson also seeks sanctions pursuant to Rule 11.

## DISCUSSION

### I.      Count VIII: Civil Conspiracy

In their Motions to Dismiss, Defendant Krewson, Defendant O'Toole, and Defendant Coletta argue that Plaintiff's civil conspiracy count under §1983 should be dismissed. Defendants Krewson, O'Toole, and Coletta, assert that Plaintiff's claim for civil conspiracy has failed to state a plausible claim for relief and even if Plaintiff's Complaint does state a claim for conspiracy against Defendant Krewson it should be dismissed under the intracorporate conspiracy doctrine.

### A.      Civil Conspiracy Claim

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." When considering a 12(b)(6) motion, all factual allegations in the complaint, and reasonable inferences arising therefrom, must be construed in favor of the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *see Knapp v. Hanson*, 183 F. 3d 786,788 (8th Cir. 1999). To survive a motion to dismiss a complaint must show that "'the pleader is entitled to relief,' in order to 'give the defendant[s] fair notice of what the… claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355

5

U.S. 41, 47 (1957)); *See also Erickson v. Pardus*, 551 U.S 89, 93 (2007).  "[O]nly a complaint that

states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)(citing *Twombly*, 550 U.S. at 556).  Further, in regard to a Rule 12(b)(6) Motion, the

Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions,
> and a formulaic recitation of the elements of a cause of action will not do, *see
> Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on
> a motion to dismiss, courts "are not bound to accept as true a legal conclusion
> couched as a factual allegation").  Factual allegations must be enough to raise a
> right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal
> Practice and Procedure ' 1216, pp. 235-236 (3d ed. 2004). *Twombly*, 550 U.S. at
> 555. *See also Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009)(en
> banc)("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that
> the pleader has the right he claims…, rather than facts that are merely consistent
> with such a right.'")(quoting *Stalley v. Catholic Health Initiative*, 509 F.3d 517,
> 521 (8th Cir. 2007)).

With these principals in mind the Court turns to the Plaintiff's conspiracy claim to determine its

sufficiency under Rule 12(b)(6).

To state claim for §1983 conspiracy against a particular defendant, a plaintiff must show:

"the defendant conspired with others to deprive him or her of a constitutional right; that at least

one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and

that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). In this

case Plaintiff brings a civil conspiracy claim against all defendants except the city of St. Louis.

Plaintiff alleges that Defendants Boone, Hays, Myers, Colletta, Marcanto, Korte, Pitterle, O'Toole,

Krewson and/or other unknown officers conspired to conceal the unconstitutional conduct of

officers of the St. Louis Police Department directed toward the Plaintiff to protect the City and St.

Louis Police Department. (ECF No. 1, ¶ 128). Defendants argue that the Plaintiff has failed to

show both agreement and an underlying denial of Plaintiff's constitutional rights. (ECF No. 13, at

6). A Plaintiff may, however, bring a §1983 conspiracy action against those who unlawfully cover up a constitutional violation. *S.L. v. St. Louis Metro. Police Dep't Bd. Of Police Comm'rs*, 725 F. 3d 843, 853 (8th Cir. 2013).  Additionally, the Court in S.L. determined that when others conspire with officers who committed the initial constitutional violation to cover it up, another, separate §1983 conspiracy claim is alleged. *Id.* at 851.

Plaintiff alleges that in furtherance of the conspiracy Defendant Krewson falsely stated that she did not know of Plaintiff's injuries and engaged in a course of conduct that was designed to cover up the misconduct of the officers and protect the City and its officers from liability. (ECF No. 1, ¶ 129).  Specifically, the Plaintiff states that Defendant Krewson's driver drove the Plaintiff to and from medical treatment; that Defendant Krewson rode in an elevator with Plaintiff after he was injured; that Defendant Krewson knew Plaintiff was working in an undercover capacity; and that Defendant Krewson commented on the injuries to Plaintiff's face. *Id*., ¶ 48. Plaintiff further alleges that despite this knowledge, Defendant Krewson stated during a September 18, 2017, press conference that "law enforcement has my full support" and on September 21, 2017, at another press conference, Defendant Krewson denied knowing about the injury of an undercover police officer on September 17, 2017. *Id*. ¶ 56.  Plaintiff further alleges that no  police report or other documents were prepared about Plaintiff's arrest or the use of force against him. *Id.* ¶ 59. It is Plaintiff's contention that Defendant Krewson participated in the creation of a false narrative that was then publicized to justify the use of force, and that Defendant Krewson furthered that false narrative by acting as though she did not know that Plaintiff had been injured. (ECF No. 15, at 6).

In support of his conspiracy claim, Plaintiff  states that he "provided information about the scene, to include but not limited to telling Defendant O'Toole and others that he had been beaten by police officers." (ECF No. 1, ¶ 46). Plaintiff additionally alleges that "[i]n a press conference

held on September 18, 2017, even though Defendant O'Toole knew [Plaintiff] was seriously injured by fellow officers, he told the media 'I'm proud to say the City of St. Louis and the police owned the night. Our officers are doing outstanding work." *Id.* ¶ 54. Plaintiff alleges that such statements show a ratification of the unlawful conduct of the officers at the scene. *Id.* Plaintiff additionally asserts that Defendant O'Toole promoted Defendant Marcantano even though he had been identified as participating in the beating of Plaintiff. *Id*. ¶ 61

Plaintiff argues that the claim for conspiracy against Defendant Colletta, is sufficient because when the Complaint is taken as a whole Plaintiff has alleged that Defendant Colletta took "actions in concert with a limited and defined group of police officers" (ECF No. 45, at 3) Plaintiff further argues that the claim for civil conspiracy against Colletta ought to stand because it "involves the 'classic case of conspiracy' in which a number of police officers took concerted action to harm a single individual (Hall) and then they and others took action to cover it up. *Id.* at 8.

The Eighth Circuit has recognized that because the elements of a conspiracy are rarely established except by circumstantial evidence, even at the summary judgement phase, judgement for the defendants is appropriate only "when the evidence is so one-sided as to leave no room for any reasonable difference of opinions as to how the case should be decided." *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 743 (8th Cir. 1982). For the purposes of a Motion to Dismiss, the Court finds that the Plaintiff has alleged sufficient facts to state a plausible claim for conspiracy against Defendants Krewson, O'Toole and Colletta.

**B.     Intracorporate Conspiracy Doctrine**

The Defendants Krewson, O'Toole, and Colletta, ask the Court to dismiss Plaintiff's §1983 claim for conspiracy pursuant to the intracorporate conspiracy doctrine. Although the doctrine has

been applied in cases involving §1985, the Eighth Circuit has not addressed whether the doctrine applies to §1983 conspiracy claims. In the absence of such direction from the Eighth Circuit, the judges in this District have consistently declined to extend the reach of the intracorpoate conspiracy doctrine at the pleadings stage. *See, Aldridge v. City of St. Louis, Mo.,* 2019 WL 1695982, at *8 (E.D. Mo. Apr. 17, 2019) (collecting cases). The Court therefore finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage. Plaintiff's claims for Conspiracy pursuant to §1983 will remain.

## II.   Municipal Liability

Defendants Krewson, O'Toole, and St. Louis City argue that Plaintiff has failed to sufficiently plead Monell liability for custom or failure to train.  (ECF No. 13, at 12; ECF No. 22, at 7; ECF No. 24, at 4).

### A.  Policy or Custom

"In the context of § 1983 municipal liability, the term 'policy' refers to 'official policy,' a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. [A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown v. City of St. Louis, Missouri*, 4:18CV 1676 JMB 2019 WL 3577491 *4 (E.D. Mo, Aug. 6, 2019)(internal citations and quotations omitted). "To establish liability based on 'custom,' a plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that conduct; and (3) that the plaintiff was injured by acts pursuant to the governmental entity's custom…" *Id.* A plaintiff need not identify a specific unconstitutional policy

to survive a motion to dismiss. *Id*., citing *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

Rather than argue that Plaintiff has failed properly to plead conspiracy in their Motion to Dismiss, Defendants Krewson and O'Toole argue that if there is a custom or policy of constitutional violations under §1983, they cannot be held liable for them because they are not the policy making officials. Defendant Krewson specifically argues that she, as an individual cannot be held liable for the actions of her subordinates. (ECF No. 13, at 12). Defendant Krewson states that under the Charter of the City of St. Louis, the division of police is directly supervised by a commissioner, who reports to the director of public safety. *Id.* The director of public safety in turn is the subordinate of the Mayor, Defendant Krewson. *Id.* at 13. Defendant Krewson argues that she "has no role to play in the quotidian operations of the police division" and that the complaint does not indicate any action undertaken by the Mayor to show *Monell* liability. *Id.* Plaintiff asserts that Defendant should not be permitted to argue that she is too removed from the events to be held liable because she was present on the night that Plaintiff was injured. (ECF No. 15, at 10).  Plaintiff argues that Defendant Krewson should be held liable under *Monell* for her own actions supporting a policy of unconstitutional behaviors. *Id.*, at 11.

Defendant O'Toole similarly argues that he cannot be held liable for the actions of his subordinates. (ECF No. 22, at 8). Defendant O'Toole does concede however, that as acting commissioner of police in 2017, he could be liable for deliberate indifference to a pattern or practice of violations of clearly established constitutional rights, if he had notice of such pattern or practice. *Id.* Defendant O'Toole maintains however that the assault on Plaintiff is a discrete instance and that a single incident cannot demonstrate the existence of a custom.

The doctrine of respondeat superior does not apply to §1983 cases. A supervisor may still be individually liable under §1983 "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred." *B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff*, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010)(citations omitted), aff'd sub nom. *B.J.G. ex rel McCray v. St. Charles Cty. Sheriff*, 400 F. App'x 127 (8th Cir. 2010). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ottman v. City of Inep., Mo.*, 34 F.3d 751, 761 (8th Cir. 2003).

In support of his *Monell* claims, Plaintiff states that Defendants engaged in a custom of:

> Arresting subjects without probable cause and in violation of their constitutional rights; Ignoring the policies and procedures of the City and/or Department, by encouraging and/or permitting the unconstitutional searches and/or seizures of citizens, the use of excessive force, and/or failing to intervene when such constitutional deprivations occur; Treating African American citizens differently and less favorably than Caucasian citizens; Engaging in a course of conduct designed to cover-up and insulate City officials from civil liability and/or embarrassment…

(ECF No. 1, ¶¶137(a)-(d)). Plaintiff additionally alleges that:

> [p]rior to [Plaintiff] being injured by fellow officers, an off duty African American police officer was shot by a Caucasian police officer when he was trying to assist in a police chase. Upon information and belief, no Internal Affairs investigation was conducted into this use of excessive force against an African American police officer, as part of a custom and practice of protecting Caucasian police officers who use excessive force, particularly against African American citizens.

(ECF No. 1, ¶ 64).

For the purposes of a Motion to Dismiss, Plaintiff has plead enough facts to support a general claim of custom liability under *Monell*. The Court finds however, that due to the incorporation of overlapping claims for customs liability in Plaintiff's Complaint, the facts alleged are insufficient to determine to what extent Plaintiff's claim is appropriate against the Defendants in their individual capacities. The Court believes that this matter would be more appropriately taken up on Summary Judgement.

### B.  Failure to Train or Supervise

To state a claim under §1983 for failure to train or supervise, Plaintiffs' must plead facts sufficient to demonstrate that, (1) the City's police officer training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate or conscious choices; and (3) the City's training and supervision deficiencies caused Plaintiffs' constitutional deprivation. *See, Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013)(citation omitted).  In support thereof, the Plaintiff argues that:

> …[T]he City's training program was inadequate to train its officers to properly handle reoccurring situations like the one involving Hall in the proper and lawful arrest of citizens; the proper use of force, the proper search of citizens, the duty to intervene to prevent the excessive use of force and other constitutional deprivations, and/or the duty to treat all citizens equally and not intentionally discriminate against African American Citizens. Defendant City's failure to train in these respects evidenced a deliberate indifference to the rights of others, to include Hall. The deficiencies in Defendants training procedures actually caused Hall's constitutional injuries as set forth herein.…. City officials failed to supervise, control, and/or discipline officers of the Department when they engaged in constitutional violations like those set forth above, such that they demonstrated a deliberate indifference to or tacit authorization of such acts on the part of the officers at the scene.

(ECF No. 1, ¶¶ 139 -142).

Plaintiff argues that he cannot allege more at this stage to support his claims for failure to train and failure to supervise. (ECF No. 15, at 13). Defendant O'Toole cites to *Faulk v. City of St. Louis,* 2019 WL 3304716 (E.D. Mo. 2019) to argue that because this Court has rejected failure to

train claims in the context of the September 2017 events at issue in the present case, that they should also be dismissed here. The Plaintiff in this case, has asserted more specific facts than the Plaintiff in *Faulk*. Plaintiff in this case has plead facts supporting a failure to supervise claim due to Defendants failure to discipline. Plaintiff has indicated that Defendant O'Toole promoted Defendant Marcantano even though he had been identified as participating in the beating of Plaintiff. *Id.* ¶ 61. Plaintiff also alleges that "[t]he officers who beat [Plaintiff]… identified themselves at a roll call the next day when ordered to do so by a commander….these officers were permitted to remain on the streets until their text messages were obtained by the FBI", and that "[a]t the time these officers were permitted to remain on the streets, the City's Civil Service Rules provided for putting officers on forced leave when they posed a risk to themselves or others" and that "no police report or other documents were prepared…[and] the officers involved…were not required to write a report memo" *Id.* ¶¶ 57-59. The Court finds that Plaintiff has plead facts that raise an inference that there were deficiencies in discipline and supervision following the alleged constitutional violations. Therefore the Plaintiff has alleged beyond the facts in *Faulk*. The Court therefore declines to dismiss Plaintiff's claim for failure to supervise at this time.

## III.     Qualified Immunity of Defendants Krewson and O'Toole as to Counts VIII and IX

Defendants Krewson and O'Toole additionally argue that the Count IX of the Complaint raising *Monell* claims against them ought to be dismissed because they are entitled to qualified immunity. (ECF No. 13, at 10; ECF No. 22 pp. 6, 10). Qualified immunity requires a two-part analysis: (1) whether the facts alleged demonstrate that a constitutional right was violated and (2) whether that right was clearly established at the time of the alleged violation. *Lindsey v. City of Orrick*, 491 F.3d 892, 897 (8th Cir. 2007). Both Defendant Krewson and Defendant O'Toole challenge the second element; whether the right allegedly violated was clearly established.

Defendant Krewson argues that the Plaintiff fails to identify any act or omission by Defendant Krewson which violated the Plaintiff's clearly established rights.   Plaintiff argues that Defendant Krewson violated the Plaintiff's constitutional rights when she conspired with others to cover-up police misconduct that injured Plaintiff Hall. In support thereof, the Plaintiff cites to *S.L. v. St. Louis Metro. Police Dep't Bd. Of Police Comm'rs*, 725 F. 3d 843 (8th Cir. 2013), in which the Eighth Circuit held that when a supervisor intentionally aids a subordinate in concealing the circumstances surrounding an improper arrest, the supervisor has reason to "understand his conduct was unlawful in violation of the arrestee's constitutional rights." *S.L.*, 725 F.3d at 853.

The question before the Court is whether the violative nature of particular conduct is clearly established. *See, Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Defendant Krewson cites to *Rizzo v. Goode*, 423 U.S. 362 (1976) to show that there is no judicially enforceable duty of mayors or even police commissioners to prevent or reduce instances of police misconduct. (ECF No. 13). Plaintiff however does not contend that prevention of police misconduct is the right that Defendant Krewson violated. Plaintiff asserts that Defendant Krewson aided her subordinates in concealing the circumstances surrounding Plaintiff's unconstitutional arrest. Defendant O'Toole claims, in his Motion to Dismiss that Plaintiff has failed to plead facts demonstrating that Defendant O'Toole participated in any actions to cover up Plaintiff's arrest. In support of this, Defendant O'Toole states that the Complaint alleges that Defendant O'Toole did not publicly proclaim the crime against Plaintiff, promoted Sgt. Marcantano, and appealed the decision of the Civil Service Commission and that the Court should not consider these facts as support for the alleged cover up because they "could have entirely innocent and lawful explanations." (ECF No. 22, at 5). As discussed previously, on a Motion to Dismiss, all facts alleged are read in the light most favorable to the Plaintiff, therefore, the Court will not view the facts alleged in light most favorable to

14

Defendants. Although actions may have a lawful explanation, that is not for the Court to weigh at this time.

In *S.L. v. St. Louis Metro. Police Dep't Bd. Of Police Comm'rs*, 725 F. 3d 843 (8th Cir. 2013) the Eighth Circuit reviewed whether qualified immunity was properly denied on a motion for summary judgement when plaintiff in that case claimed that defendants conspired to cover up unconstitutional actions including police misconduct and prevent a plaintiff from bringing a valid §1983 action. *See, S.L.,* 725 F.3d 843, at 853. The Eighth Circuit stated in support of its holding, that "[o]ur conclusion is also consistent with the 'obvious' function of qualified immunity, which is to 'excuse an officer who makes a reasonable mistake in the exercise of his official duties' but not one who 'intentionally abuse[s] a person's known rights.'" The Court goes on to state that "A reasonable officer would be aware that it is impermissible to assist in falsifying an arrest report to hinder a investigation into the underlying misconduct." *Id.*, at 854. Although Plaintiff does not allege identical facts, he does allege that no investigation occurred regarding his arrest and that the procedures of the police department were not followed to cover up the unconstitutional actions. This Court finds that intentional actions of officers or those in office to cover up unconstitutional actions is a clearly established violation for the purposes of qualified immunity. *See, Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999)(where a supervising officer has intentionally aided a subordinate office in concealing the circumstances surrounding an improper arrest is in violation of the arrestee's constitutional rights). Defendant O'Toole finally argues that because many of those involved in Plaintiff Hall's arrest have been indicted there could not have been a conspiracy to cover it up. (ECF No. 22, at 4). This argument has no merit. A conspiracy does not need to be successful in concealing conduct to be a conspiracy. The Court will deny Defendants Qualified Immunity at this time.

IV.     **Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11**

Before the Court is also Defendant Krewson's Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. (ECF No. 16). Federal Rule of Civil Procedure 11 requires representations to the Court be based on information to the best of the person's knowledge, information, and belief. Representations are to be formed after an inquiry that is reasonable under the circumstances. Specifically, Rule 11 requires that claims are "not being presented for any imporper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation" nor should "the claims, defenses, and other legal contentions" be fivilous. Fed. R. Civ. P. 11(b)(1)-(2). Defendant Krewson argues that Plaintiff's claim against Defendant Krewson for conspiracy is frivolous. (ECF No. 27). In support of her Motion, Defendant Krewson restates much of her arguments raised in her Motion to Dismiss. This Court has determined that Plaintiff has met his burden of alleging facts necessary to overcome a Motion to Dismiss as to his conspiracy claim. The claim is therefore not frivolous and the Court will decline to impose sanctions against the Plaintiff. Defendant Krewson's Motion for Sanctions is therefore be denied.

V.      **Colletta's Motion to Dismiss Counts II, IV, V, VI, VII, XI for Failure to State a Claim**

Defendant Colletta argues in her Motion to Dismiss that various counts brought against her ought to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant Colletta specifically argues that Plaintiff has failed to provide sufficient facts to support his claims that Defendant Colletta unconstitutionally failed to intervene (Count II), participated in Plaintiff's unconstitutional arrest (Count IV), violated Plaintiff's equal protection (Count V), violated §1981 (Count VI), participated in the

unconstitutional search or seizure of Plaintiff or his effects, (Count VII) or participated in Plaintiff's false arrest (Count XI).

As discussed above, Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." When considering a 12(b)(6) motion, all factual allegations in the complaint, and reasonable inferences arising therefrom, must be construed in favor of the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *see Knapp v. Hanson*, 183 F. 3d 786,788 (8th Cir. 1999). To survive a motion to dismiss a complaint must show that "'the pleader is entitled to relief,' in order to 'give the defendant[s] fair notice of what the… claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *See also Erickson v. Pardus*, 551 U.S 89, 93 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Twombly*, 550 U.S. at 556).

### A. Counts II, IV, VII, and XI

Plaintiff alleges that Defendant Colletta, along with other Defendants participated in his unconstitutional arrest (Count IV), unconstitutional search and seizure (Count VII )and his false arrest (Count XI). Plaintiff additionally alleges in Count II that Defendant Colletta failed to intervene in these unconstitutional actions. The Eighth Circuit has acknowledged that a failure to intervene may be a viable cause of action against a police officer when that officer fails to intervene in preventing the unconstitutional use of force by another office and had the opportunity to do so. "[T]he plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015)(standard on summary judgement). Plaintiff must show that the officer had reasonable

opportunity to stop or prevent the excessive force. *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009).

In his Complaint, Plaintiff asserts that Defendant Colletta ordered Plaintiff to the ground. (ECF No. 1, ¶ 30). That despite complying with the order, Plaintiff was picked up and slammed to the ground and beaten by officers. *Id.* ¶¶ 32, 34. Plaintiff asserts that because he was complying with the order there was no need for any use of force against him. (ECF No. 45, at 3).  Plaintiff specifically asserts that Colletta was present when he was beaten and failed to intervene to prevent it. Plaintiff additionally asserts that Colletta acted in concert with the group of officers in support of his claims. (ECF No. 45, at 3). Plaintiff, in response to Defendant Colletta's Motion to Dismiss assers that:

> Colletta was indicted on federal charges and subsequently pleaded guilty to making false statements to a Grand Jury. She also [*sic] admitted to lying to the FBI during the course of a federal investigation. In her guilty plea, Colletta admitted that Hall was not doing anything that made her think he was committing a crime, that he was not doing anything to give her probable cause to arrest him, that he was complying with her orders and there was no need for the force that was used against him.

(ECF No. 45, at 4). Plaintiff asks the Court to take judicial notice of Defendant Colletta's plea agreement in *United States v. Boone, et al.* No. 4:18-CR-975 in support of his assertions. (ECF No. 45, at 4 n. 2). On a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must generally ignore any materials outside of the pleadings. The Court may, however, consider materials that are part of the public record or do not contradict the complaint and materials that are necessarily embraced by the pleadings. *Pourous Media Corp. v. Pall corp.*. 186 F.3d (8th Cir. 1999). The Court will take judicial notice of Defendant Colletta's guilty plea.

Based on the above facts, the Plaintiff has sufficiently plead facts that show that he was subject to unconstitutional arrest, unconstitutional search and seizure and false arrest for the purpose of a Motion to Dismiss. Plaintiff has further alleged, the Defendant Colletta was present

when these constitutional violations allegedly took place, was aware that force was not needed to effect the arrest of the Plaintiff, and failed to intervene. Therefore, the Plaintiff has sufficiently alleged failure to intervene against Defendant Colletta to overcome the Motion to Dismiss. The Motion to Dismiss by officer Colletta as to Counts II, IV, VII and XI is therefore denied.

**B.  Counts V and VI for violations of Equal Protection and §1981**.

Defendant Colletta argues in her Motion to Dismiss that Plaintiff has failed to state a claim with regard to Counts V and VI regarding Plaintiff's Equal Protection rights and rights enumerated under 42 U.S.C. §1981. Defendant Colletta specifically argues that Plaintiff has not sufficiently shown that he was treated differently because of his race. Plaintiff points to the Complaint as a whole as support for his Equal Protection and §1981 claims. (ECF No. 45, at 6). As discussed previously, Plaintiff's Complaint points to another instance in which an African American police officer was subject to excessive force. (ECF No. 1 ¶ 64). Plaintiff raises this instance in support of his claim for custom liability. *Id.* Plaintiff additionally states that a "text message sent from Hayes to Boone shows that Caucasian officers were treated differently than African American protesters." (ECF No. 45, at 6) *and see* (ECF No. 1 ¶ 51). The redacted text messages quoted in the Complaint do not clearly indicate that Plaintiff was treated differently because of his race, and do not clearly tie Defendant Colletta to these claims, but Plaintiff's allegations pointing to other instances of African American police officers being treated differently do allege facts consistent with discrimination because of his race. The Court will grant the Plaintiff leave to amend his Complaint to more clearly allege  his Equal Protection and §1981 claims.

**VI.    Motion to Strike**

Defendants Krewson, O'Toole and the City of St. Louis move to Strike the Complaint pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) allows the Court to strike from a

pleasing, "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The party moving to strike bears the burden of demonstrating that the challenged allegations are so unrealted to Plaintiff's claim that they are devoid of merit, unworthy of consideration and are unduly prejudicial. *Whitlock-Kincade v. United States DOD,* 2007 WL 781810 (E.D. Mo. March 13, 2007). In federal court, motions to strike are infrequently granted because they are viewed with disfavor. *Stanbury Law Firm, P.S. v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir. 2000).

In their motion, Defendants argue that the allegations against individual defendants, all officers or employees of the city in their official capacities should be struck because they are redundant if the city itself has been joined as a Defendant. (ECF No. 11, at 2). Defendants point to *Banks v. Slay*, 875 F.3d 876, 881 (8th Cir. 2017*), citing Roberts v. Dillon*, 15 F.3d 113 (8th Cir. 1994), for the proposition that it is redundant to name the governmental entity where official capacity suits against officers have been brought. The Defendants ask the court to find the reverse. Defendant argues that because the government entity has been joined in this case, there is no need to bring an official capacity claim against the individual Defendants in this case. Defendants however have not cited to any case law in this circuit to support their contentions.

Plaintiff argues that although a claim against an individual in his or her official capacity may really be a suit against the entity it does not mean that the named defendants should be stricken in their official capacity. In support of this assertion, the Plaintiff cites to several cases involving excessive force by police officers in St. Louis. Defendant has failed to show that the official capacity claims against the Defendants are so redundant, immaterial or scandalous as to be dismissed. Furthermore, the City has not made a claim that Plaintiff's official capacity claims against Defendant's Krewson and O'Toole will produce prejudice to the City, nor has the City

raised this argument as to any of the officers that Plaintiff has also named in their individual and official capacities. Therefore, Defendant's Motion to Strike is denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Krewson's Motion to Dismiss (ECF No. 12) is **DENIED**; that Defendant Krewson's Motion for Sanctions (ECF No. 26) is **DENIED**; that Defendant O'Toole's Motion to Dismiss (ECF No. 21) is **DENIED**; that Defendant City of St. Louis' Motion to Dismiss is **DENIED**; and that the Motion of Defendant Krewson, O'Toole and the City of St. Louis to Strike (ECF No. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Coletta's Motion to Dismiss (ECF No. 39) is GRANTED in part and DENIED in part. Plaintiff will be granted fourteen (14) days from the issuance of this order, to amend his Complaint as to Count V and Count VI to clearly allege his Equal Protection §1981 claims.

Dated this 3rd day of June, 2020.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT COURT